**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
          nathaniel@gucovschilaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX NICHOLAS ULRICH and SABRINA ZAHIR, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| THE LIV GROUP, INC., | |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Max Nicholas Ulrich and Sabrina Zahir (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against The LIV Group, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action on behalf of themselves and all similarly situated consumers who purchased Liquid I.V. Hydration Multiplier Sugar-Free Electrolyte Drink Mix (collectively, the "Products").[1]

2.      Defendant markets and advertises the Products as "Sugar Free," "Zero Sugar," and "0 Sugar" (collectively, the "Representations"). However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards. It is not present in trace amounts; it is the first-listed and predominant ingredient by weight.

3.      Defendant's own labeling discloses that each serving of the Products contains either four or five grams of allulose, depending on the variant. Because allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards, each Product contains at least eight times the 0.5-gram cutoff for a food labeled "sugar free." 21 C.F.R. §§ 101.9(c)(6)(ii), 101.60(c)(1)(i). Defendant's Representations are therefore false.

4.      Accordingly, Plaintiffs bring claims against Defendant for violations of: (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (4) New York General Business Law § 349; (5) New York

---

[1] The Products include all flavors and pack configurations of Liquid I.V. Hydration Multiplier Sugar-Free Electrolyte Drink Mix, including the Green Grape, Lemon Lime, Lychee Splash, Mandarin Orange, Mango Passion Fruit, Rainbow Sherbet, Raspberry, Raspberry Melon, Ring Pop, Strawberry, White Peach, licensed and co-branded editions (e.g., Spider-Man Raspberry); and the Sugar-Free Energy Multiplier: including variety packs, in all pack sizes.

General Business Law § 350; (6) state consumer-protection statutes; (7) breach of express warranty; and (8) unjust enrichment.

**PARTIES**

5. Plaintiff Max Nicholas Ulrich is a citizen of California residing in Santa Rosa, California. Plaintiff Ulrich purchased Defendant's Liquid I.V. Sugar Free Hydration Multiplier Vegan Powder Electrolyte Supplements in the Lemon Lime 10ct flavor for personal use at a Target store in Santa Rosa, California, on or about July 24, 2026, for approximately $14.99. Prior to making his purchase, Plaintiff Ulrich saw and relied on Defendant's representations that the Products were "Sugar Free." Based on these representations, Plaintiff Ulrich reasonably believed that the Products contained no sugar. Plaintiff Ulrich relied on these representations when he decided to purchase the Products. Accordingly, these representations were part of the basis of his bargain, in that Plaintiff Ulrich would not have purchased the Products on the same terms had he known that the representations were untrue. Furthermore, in making his purchase, Plaintiff Ulrich paid a price premium due to Defendant's false and misleading "Sugar Free" claims. Plaintiff Ulrich, however, did not receive the benefit of the bargain because the Products were not, in fact, free of sugar. Instead, they were sweetened predominantly with allulose, a sugar, at four grams per serving—eight times the 0.5-gram cutoff for a product labeled "sugar free." Had Plaintiff Ulrich known that Defendant's representations were false and misleading, he would not have purchased the Products or would have paid substantially less for them.

6. Plaintiff Ulrich remains interested in purchasing electrolyte drink mixes and hydration products that are truly sugar free. However, he cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff Ulrich will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff Ulrich is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff Ulrich nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

7.    Plaintiff Sabrina Zahir is a resident of Brooklyn, New York. While residing in Brooklyn, Plaintiff Zahir purchased one of Defendant's Products—Liquid I.V. Sugar Free Hydration Electrolytes, Variety Pack, 16 Count—for her personal use through Defendant's official https://www.amazon.com/Liquid-I-V-%C2%AE-Hydration-Multiplier%C2%AE-Sugar/dp/B0CSQWZPBX listing on August 26, 2025, for $27.99. Prior to making her purchase, Plaintiff Zahir saw and relied on Defendant's representation that the Product was "Sugar Free." Based on this representation, Plaintiff Zahir reasonably believed that the Product contained no sugar. Plaintiff Zahir relied on this representation when she decided to purchase the Product. Accordingly, the representation was part of the basis of her bargain, in that Plaintiff Zahir would not have purchased the Product on the same terms had she known that the representation was untrue. Furthermore, in making her purchase, Plaintiff Zahir paid a price premium due to Defendant's false and misleading "Sugar Free" claim. Plaintiff Zahir, however, did not receive the benefit of the bargain because the Product was not, in fact, free of sugar; instead, it was sweetened predominantly with allulose, a sugar, at four per serving—at least eight times the 0.5-gram cutoff for a product labeled "sugar free." Had Plaintiff Zahir known that Defendant's representation was false and misleading, she would not have purchased the Product or would have paid substantially less for it.

8.    Plaintiff Zahir remains interested in purchasing electrolyte drink mixes and hydration products that are truly sugar free. However, she cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff Zahir will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff Zahir is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff Zahir nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    3

9. Defendant The LIV Group, Inc. is a Delaware corporation with its principal place of business in Los Angeles, California. Defendant markets, distributes, and sells the Products throughout California and the United States, including in this District.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California and therefore is at home in this State.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff Ulrich's and the class members' claims took place in this District.

## FACTUAL ALLEGATIONS

**A.      Consumers Seek Out and Pay More for Products That Contain No Sugar**

13. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugars.[2]

14. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars. The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits. The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[3]

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.
[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf; World

15.     Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it.  Products labeled "sugar free" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

16.     Defendant has capitalized on that demand. It markets Products whose predominant ingredient is allulose, a sugar, while labeling and advertising them as "Sugar Free." Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**B.      Defendant's Representations and Warranties**

17.     Defendant prominently states on the front of each Product's label that the Product is "SUGAR-FREE." On additional panels and in related labeling, Defendant reinforces that message by representing that the Products are formulated as a "0 sugar hydration solution" with "zero sugar and zero artificial sweeteners." Elsewhere, Defendant discloses that the Products contain either "4g Allulose Per Serving" or "5g Allulose Per Serving," depending on the variant." These claims are referred to herein as the "Representations."

18.     Below is an illustrative sampling of the Products and the Representations:

Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet; American Heart Association, Added Sugars (last reviewed Aug. 2, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.





LIQUID I.V. — SUGAR-FREE CLAIMS & ALLULOSE DISCLOSURE

SUGAR-FREE claims    Nutrition Facts sugars rows    Allulose disclosure & footnote

CARTONS PHOTOGRAPHED AUG 2026

03  Rainbow Sherbert

FRONT-LABEL PROMISE
**SUGAR-FREE**

"The smart 0 sugar hydration solution clinically tested to hydrate more than water alone ."

" PROPRIETARY AMINO ACID ALLULOSE BLEND is our innovative hydration solution with zero sugar and zero artificial sweeteners ."

| | | |
|---|---|---|
| Total Carbohydrate | 5g | 2% |
| Total Sugars | | 0g |
| Includes 0g Added Sugars | | 0% |

" LOW CALORIE | CONTAINS 4g ALLULOSE PER SERVING "

"1 ADDS A DIETARILY INSIGNIFICANT AMOUNT OF SUGAR "

04  Mandarin Orange

FRONT-LABEL PROMISE
**SUGAR-FREE**

"The smart 0 sugar hydration solution clinically tested to hydrate more than water alone ."

" PROPRIETARY AMINO ACID ALLULOSE BLEND is our innovative hydration solution with zero sugar and zero artificial sweeteners ."

| | | |
|---|---|---|
| Total Carbohydrate | 5g | 2% |
| Total Sugars | | 0g |
| Includes 0g Added Sugars | | 0% |

" LOW CALORIE | CONTAINS 4g ALLULOSE PER SERVING "

"1 ADDS A DIETARILY INSIGNIFICANT AMOUNT OF SUGAR "

LIQUID I.V. SUGAR-FREE CLAIM EXHIBIT                                          SHEET 3 OF 7









LIQUID I.V. — SUGAR-FREE CLAIMS & ALLULOSE DISCLOSURE

SUGAR-FREE claims    Nutrition Facts sugars rows    Allulose disclosure & footnote

AMAZON.COM LISTING CAPTURED AUG 2026

13  Variety Pack, 16 Count — Amazon.com listing (ASIN B0CSQWZPBX)

**SOURCE OF CAPTURE**

Front and back carousel images and the "About this item" copy block, captured from the Amazon.com product detail page. No side or back carton panel photograph is published on this listing, so the "About this item" copy is reproduced here in the position occupied by the side panel on sheets 1–12.

https://www.amazon.com/Liquid-I-V-%C2%AE-Hydration-Multiplier%C2%AE-Sugar/dp/B0CSQWZPBX

FRONT-IMAGE PROMISE

**SUGAR-FREE**

"ABOUT THIS ITEM" — AMAZON.COM PRODUCT DETAIL PAGE

**About this item**

- HYDRATION MIX: Hydration Multiplier Sugar-Free is a great-tasting, non-GMO and Keto Friendly electrolyte drink that delivers superior hydration than water alone.
- GREAT TASTE: Sugar-Free White Peach - a blend of fresh fuzzy and candied peach flavors with subtle notes of nectarine and white floral. Sugar-Free Lemon Lime - a sweet and tart blend of lemon lime flavors with a candy citrus finish. Sugar-Free Raspberry Melon - a balanced sip of cantaloupe and candy raspberry notes for true-to-fruit flavor. Sugar-Free Green Grape - crisp notes of fresh, verdant grapes with subtle hints of pear flavor.
- SCIENCE-BACKED FORMULA: Sugar-free hydration designed to work as hard as you do during the holiday rush, with 0 sugar and 0 artificial sweeteners and 3x the electrolytes of the leading sports drink.
- EXTRAORDINARY HYDRATION: Hydration Multiplier Sugar-Free is made with our proprietary Amino Acid Allulose Blend. It has 3x the electrolytes of the leading sports drink, and 8 vitamins and nutrients. Gluten-free, soy-free, dairy-free, and no artificial colors.
- CONVENIENCE: Single-serving, travel-friendly packets are easy to enjoy on the go. Pour one easy-to-open packet into 16 oz of water, mix or shake, and hydrate.
- HYDRATION AID: Since 2015, we have donated over 55 million servings of Liquid I.V. to those in need around the globe, and donate over 1% of our revenue to our Impact programs.

"SCIENCE-BACKED FORMULA: Sugar-free hydration designed to work as hard as you do during the holiday rush, with 0 sugar and 0 artificial sweeteners and 3x the electrolytes of the leading sports drink."

"EXTRAORDINARY HYDRATION: Hydration Multiplier Sugar-Free is made with our proprietary Amino Acid Allulose Blend. It has 3x the electrolytes of the leading sports drink, and 8 vitamins and nutrients. Gluten-free, soy-free, dairy-free, and no artificial colors."

| | |
|---|---|
| Total Carbohydrate | 5g 2% · Green Grape 4g 2% |
| Total Sugars | 0g (all 4 columns) |
| Includes 0g Added Sugars | 0% (all 4 columns) |

"¹ adds a dietarily insignificant amount of sugar"

No "CONTAINS 4g ALLULOSE PER SERVING" line appears anywhere in the images published on this listing. Allulose is disclosed only as the first ingredient ("Allulose¹") in each of the four ingredient statements.

LIQUID I.V. SUGAR-FREE CLAIM EXHIBIT                                    SHEET 9 OF 9

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              13

19. Defendant disseminated the Representations through the Products' packaging, its own website, Amazon.com, and other online marketing. On its website, Defendant advertises the Variety Pack as providing "superior hydration than water alone, without any sugar" and as containing "0 sugar and 0 artificial sweeteners."[4] As shown in the representative labels reproduced above, the Products' labeling separately describes the formula as "The Smart 0 Sugar Hydration Solution Clinically Tested To Hydrate More Than Water Alone" and identifies the sweetening system as a "Proprietary Amino Acid Allulose Blend" that contains "zero sugar and zero artificial sweeteners."

20. Defendant likewise disseminates the Representations through its official Amazon.com listings. As depicted below, the Product is promoted as containing "0 sugar and 0 artificial sweeteners."[5]



21. The Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "Sugar-Free," "Zero Sugar," and "0

---

[4] Liquid I.V., Variety Pack Hydration Multiplier® Sugar-Free, https://www.liquid-iv.com/products/variety-pack-hydration-multiplier-sugar-free (last visited Aug. 11, 2026).

[5] Liquid I.V. Sugar Free Hydration Electrolytes, Variety Pack, 16 Count, Amazon.com, https://www.amazon.com/dp/B0CSQWZPBX (last visited Aug. 11, 2026).

Sugar," and federal and California law prescribe an objective standard governing when those terms may be used.

22. The Representations are not ambiguous. "Sugar-Free" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. The Products' "0g" Nutrition Facts declarations further reinforce the no-sugar message to consumers, making it impossible for consumers to discover that the Products do, in fact, contain sugar.

**C. Allulose Is a Sugar**

23. Allulose is a sugar.

24. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

25. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8] The food science literature describes allulose and other rare sugars as "monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[9]

---

[6] Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

[7] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients art. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[8] Maeng et al., supra note 6, at 2.

[9] Maeng et al., supra note 6, at 9–10.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    15

26.     Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. Non-caloric high-intensity sweeteners such as saccharin, aspartame, acesulfame-k, neotame, sucralose, and advantame are 200 to 20,000 times as sweet as sucrose.[10] By contrast, allulose has approximately 70% of sucrose's sweetness and, as the Products' own labels show, is used in large quantities as a bulk sweetener.[11] That is precisely why each serving of the Products contains four or five grams of it, depending on the variant.

27.     Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[12] It is used as "a partial replacement of added sugars."[13] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[14]

28.     Allulose is the first-listed ingredient in the Products. Under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Allulose, a sugar, is therefore the Products' predominant ingredient by weight.

29.     Defendant's own side- and back-panel labeling discloses either "4g Allulose Per Serving" Or "5g Allulose Per Serving," depending on the variant. In a statement keyed to the allulose ingredient listing, Defendant further states that allulose "Adds A Dietarily Insignificant Amount Of Sugar." That statement confirms Defendant's knowledge that allulose is, and adds, sugar.

30.     The Food and Drug Administration ("FDA") has recognized that allulose is a sugar. In its 2016 Nutrition Facts rulemaking, FDA stated that allulose, "as a monosaccharide, must be

---

[10] Maeng et al., supra note 6, at 9.

[11] Mengting Tao, Wenli Zhang & Wanmeng Mu, d-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[12] Han et al., supra note 7, at 10.

[13] *Id.*

[14] Wenli Zhang et al., D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges, 63 Critical Revs. Food Sci. & Nutrition 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

---

included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[15] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and contains no allulose exclusion. 21 C.F.R. § 101.9(c)(6)(ii).

31.    The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sugar" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[16]

32.    Defendant's Products are electrolyte drink mixes sweetened predominantly with sugar concealed behind a name consumers do not recognize.

### D.    The Products Violate the FDA Nutrient Content Regulations

33.    Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

34.    FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate "Sugar-Free," "Zero Sugar," and "0 Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

35.    The "Sugar-Free," "Zero Sugar," and "0 Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

36.    Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations.  21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of

---

[15] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[16] Calorie Control Council, Allulose, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited Aug. 11, 2026).

---

a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

37.    Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "zero sugar" nutrient content claims at issue in this case.  That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

(i) The food contains less than 0.5 g of sugars, as defined in §

101.9(c)(6)(ii), per reference amount customarily consumed and per

labeled serving . . . ; and

(ii) The food contains no ingredient that is a sugar or that is generally

understood by consumers to contain sugars unless the listing of the

ingredient in the ingredient statement is followed by an asterisk that

refers to the statement below the list of ingredients, which states

"adds a trivial amount of sugar," "adds a negligible amount of

sugar," or "adds a dietarily insignificant amount of sugar" . . . .

38.    21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

39.    The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

40.    By Defendant's own admission on the Products' labels, each serving of the Products contains either four or five grams of allulose, depending on the variant. Those amounts of sugar, by themselves, are at least eight times the FDA's threshold for labeling a product "sugar free" or "zero

sugar" under section 101.60(c)(1)(i). The Products therefore cannot lawfully bear the Representations.

41.     Defendant's "adds a dietarily insignificant amount of sugar" disclaimer does not save the claims. The disclaimer option under section 101.60(c)(1)(ii) is available only where the independent under-0.5-gram requirement of section 101.60(c)(1)(i) is also met, which it is not. Moreover, at least four grams per serving is not a "trivial," "negligible," or "dietarily insignificant" amount of sugar, so the disclaimer is itself false and misleading.

42.     Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

43.     Plaintiffs do not seek to enforce the FDCA directly. They seek relief under independently enforceable state consumer-protection laws, including Sherman Law provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards California has adopted and the conduct that renders the Products misbranded under California law.

**E.     Defendant's Conduct Violates California's Food Labeling Laws**

44.     Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); see also id. § 110670.

45.     Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a)  Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b)  Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c)  Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d)  Section 110765 (making it unlawful for any person to misbrand any food); and

(e)  Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

46.    Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a)  Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b)  Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c)  Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

47.    Because the Products bear "Sugar Free" and "Zero Sugar" nutrient-content claims despite containing four or five grams of allulose per serving, depending on the variant—at least eight times the 0.5-gram cutoff in 21 C.F.R. § 101.60(c)(1)—the Products are misbranded under California law, and Defendant's advertising, distribution, and sale of the Products are unlawful.

**F.    Reasonable Consumers Cannot Detect Defendant's Deception**

48.    Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation on the front of the package that the Products are "Sugar Free." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

49.    In an in-store observational study of 11,781 grocery shoppers in six European countries—the United Kingdom, Sweden, France, Germany, Poland, and Hungary—62.6% of shoppers were observed looking at the front of the first product they bought, while only 7.7% were observed looking at that product elsewhere.[17]

---

[17] Klaus G. Grunert et al., Use and Understanding of Nutrition Information on Food Labels in Six European Countries, 18 J. Pub. Health 261, 266 (2010), https://doi.org/10.1007/s10389-009-0307-0.

50.    In one observational study of 802 supermarket shoppers, the mean time between arriving at and departing from a product-category display was less than twelve seconds.[18]

51.    Allulose is not a common household name. Thus, reasonable consumers, including Plaintiffs, are unlikely to recognize the term or infer from the ingredient list alone that it is a sugar.

52.    Defendant's deception is especially misleading because a consumer who reviews the Nutrition Facts table would encounter a 0g Total Sugars disclosure, even though the labels contains four or five grams of allulose, which is a sugar, per serving—at least eight times the 0.5-gram cutoff for a "sugar free" claim.

53.    Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**G.    Defendant Knew the Representations Were False**

54.    Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar, as its own "Adds A Dietarily Insignificant Amount Of Sugar" statement confirms; (c) its labels represented that the Products contained no sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for Products containing sugar.

55.    Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge

---

[18] Peter R. Dickson & Alan G. Sawyer, The Price Knowledge and Search of Supermarket Shoppers, 54 J. Marketing 42, 47 (1990), https://doi.org/10.1177/002224299005400304.

that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**H.    Defendant's Sugar-Free Claims Injured Plaintiffs and the Classes**

56.    Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that the predominant ingredient is a sugar; (c) the fact that each serving contains four or five grams of allulose, depending on the variant—at least eight times the 0.5-gram cutoff; (d) the fact that the Products are not sugar free; and (e) the fact that the Products are misbranded under federal and California law when sold bearing the Representations.

57.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products that Plaintiffs and members of the Classes did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff Ulrich and members of the California Subclass, purchased misbranded Products that could not lawfully have been sold in California.

58.    Accordingly, Plaintiffs and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**I.    Plaintiffs Lack an Adequate Remedy at Law**

59.    Plaintiffs lack an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiffs' inability to rely on Defendant's Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Representations can address that prospective harm.

60.    Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiffs

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              22

and Class Members paid and the value of the Products as received, and disgorgement of revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

61.     Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL and FAL carry four-year limitations periods, which may reach purchases not fully remediable under other causes of action.

62.     The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiffs' warranty and common-law claims are more limited, focusing on duties arising from Defendant's Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

<u>**CLASS ALLEGATIONS**</u>

63.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

**Multi-State Consumer Protection Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with a consumer-protection statute materially similar to the statutes identified herein.

**Multi-State Warranty Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with express-warranty law materially similar to the laws identified herein.

**California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

**New York Subclass:** All persons in New York who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

64. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiffs' counsel or Defendant's counsel.

65. Plaintiffs reserve the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

66. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

67. **Numerosity:** While the exact number of members of the Classes is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

68. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a sugar;

(b) Whether the Products were "Sugar Free";

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiffs and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiffs and the members of the Classes are entitled to statutory damages; and

(i) Whether Plaintiffs and the members of the Classes are entitled to attorneys' fees and costs.

69.    With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

70.    With respect to the New York Subclass, additional questions of law and fact common to its members include whether Defendant violated New York General Business Law §§ 349 and 350.

71.    **Typicality:** The claims of the named Plaintiffs are typical of the claims of other members of the Classes because the named Plaintiffs were exposed to Defendant's Representations, purchased the Products in reliance on those Representations, and suffered losses as a result.

72.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives because they have no interests adverse to those of the Classes, are committed to the vigorous prosecution of this action, and have retained skilled and experienced counsel.

73.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure

23(b)(3) because the expense and burden of individual litigation make it economically unfeasible for members of the Classes to seek redress outside a class action. Even if Class Members could afford individual litigation, the resulting burden on the courts would be substantial. Individualized litigation would also create a risk of varying, inconsistent, or contradictory judgments and would magnify delay and expense by requiring multiple trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves the resources of the parties and courts, and protects each Class Member's rights. Plaintiffs anticipate no difficulty in managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws. Separate actions could also subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750 et seq.**
**(On Behalf of Plaintiff Ulrich and the California Subclass)**

74.    Plaintiff Ulrich incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

75.    Plaintiff Ulrich brings this claim on behalf of himself and the California Subclass against Defendant.

76.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

77.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

78.    Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

79.　Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products are "Sugar Free" even though they contain four or five grams of allulose per serving, depending on the variant—at least eight times the 0.5-gram cutoff.

80.　Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

81.　On August 10, 2026, counsel for Plaintiff Ulrich mailed a pre-suit notice letter pursuant to Cal. Civ. Code § 1782 via certified mail, return receipt requested, to Defendant. The letter provided notice of the alleged CLRA violations and other consumer protection statutes on behalf of the class members and demanded that the recipients correct the unlawful, unfair, false, or deceptive practices alleged herein.

82.　Plaintiff Ulrich and the California Subclass Members currently seek injunctive relief under the CLRA and reserve the right to amend the Complaint to seek any additional relief authorized after expiration of the statutory notice period. Cal. Civ. Code §§ 1780, 1782(d).

## COUNT II
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200 et seq.
### (On Behalf of Plaintiff Ulrich and the California Subclass)

83.　Plaintiff Ulrich hereby incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

84.　Plaintiff Ulrich brings this claim individually and on behalf of the California Subclass against Defendant.

85.　Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

86.　Plaintiff Ulrich has standing to pursue this claim because he suffered an injury in fact and lost money or property as a result of Defendant's conduct. Plaintiff Ulrich purchased the Lemon Lime Product for personal use, relied on Defendant's representation that it was "Sugar Free," and spent money he otherwise would not have spent had he known it contained four grams of allulose per serving.

87.    The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or others similarly situated who are affected by the unlawful or unfair business practice or act.

88.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 et seq.

89.    Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. §§ 101.13 and 101.60(c)(1).

90.    Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices.** Defendant's acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Business & Professions Code § 17200 et seq. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. There is no utility in representing that a product sweetened predominantly with sugar contains no sugar. Furthermore, Defendant's false and misleading representations are detrimental to competitors offering electrolyte drink mixes that either do not make similar claims or do not contradict those claims by sweetening

their products with sugar. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

91.     Plaintiff Ulrich and the California Subclass Members suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the presence and amount of sugar in the Products.

92.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiff Ulrich and the California Subclass Members.

93.     Plaintiff Ulrich and the California Subclass Members could not have reasonably avoided their injury or known that the Products' prominent labeling and marketing were inaccurate. Furthermore, consumers lack the specialized knowledge to determine whether an ingredient such as allulose is a sugar, and Defendant's own back-panel disclaimer affirmatively assured them that allulose added a "dietarily insignificant amount of sugar."  As such, they could not have reasonably avoided the injury they suffered.

94.     Pursuant to California Business and Professions Code § 17203, Plaintiff Ulrich and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT III
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500
### (On Behalf of Plaintiff Ulrich and the California Subclass)

95.     Plaintiff Ulrich hereby incorporates the foregoing allegations as if fully set forth herein.

96.     Plaintiff Ulrich brings this claim on behalf of himself and the California Subclass against Defendant.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                      29

97. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the California Subclass and the public. Defendant represents that the Products are "Sugar Free" even though they contain four or five grams of allulose per serving, depending on the variant—at least eight times the 0.5-gram cutoff.

98. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

99. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents that the Products are "Sugar Free," "Zero Sugar," and "0 Sugar."

100. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. Plaintiff Ulrich and the California Subclass based their purchasing decisions on Defendant's materially false Representations and were injured in fact and lost money or property as a result.

101. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

102. Plaintiff Ulrich and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT IV
### Violation of New York General Business Law ("GBL") § 349
### (On Behalf of Plaintiff Zahir and the New York Subclass)

103. Plaintiff Zahir hereby incorporates the foregoing allegations as if fully set forth herein.

104. Plaintiff Zahir brings this claim individually and on behalf of the New York Subclass against Defendant.

105.    New York General Business Law § 349 declares unlawful "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

106.    Defendant is a "person" engaged in "business, trade or commerce" within the meaning of GBL § 349, and its marketing, labeling, and sale of the Products to New York consumers constitute business, trade, or commerce in New York.

107.    Defendant's conduct was consumer-oriented. Defendant marketed and sold the Products to the public through uniform labeling and nationwide online listings directed to consumers, including New York consumers. Defendant profited by representing that the Products are "Sugar Free" even though they contain four or five grams of allulose per serving, depending on the variant.

108.    Defendant engaged in deceptive acts and practices by falsely representing that the Products are "Sugar Free" even though they contain sugar in the form of allulose—their first-listed and predominant ingredient by weight.

109.    The Representations were material and were likely to mislead a reasonable consumer acting reasonably under the circumstances.

110.    A reasonable consumer would understand the Representations to mean that the Products contain no sugar when, in fact, they contain allulose.

111.    Plaintiff Zahir and members of the New York Subclass were injured as a result of Defendant's deceptive acts and practices.

112.    In reliance on the Representations, Plaintiff Zahir and members of the New York Subclass paid a premium for Products they otherwise would not have purchased, or would have purchased only at a lower price, and received Products worth less than what they paid. Had they known that the Products contained allulose and were not sugar free, Plaintiff Zahir and members of the New York Subclass would not have purchased the Products or would have paid significantly less for them.

113.    Defendant made the Representations willfully and knowingly and with reckless disregard for the truth.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          31

114.　As a direct and proximate result of Defendant's violations of GBL § 349, Plaintiff Zahir and members of the New York Subclass are entitled to recover their actual damages or fifty dollars, whichever is greater, together with treble damages up to one thousand dollars for Defendant's willful and knowing violations, reasonable attorneys' fees, and injunctive relief enjoining Defendant from continuing the deceptive acts and practices alleged herein. N.Y. Gen. Bus. Law § 349(h).

## COUNT V
### Violation of New York General Business Law § 350
### (On Behalf of Plaintiff Zahir and the New York Subclass)

115.　Plaintiff Zahir hereby incorporates the foregoing allegations as if fully set forth herein.

116.　Plaintiff Zahir brings this claim individually and on behalf of the New York Subclass against Defendant.

117.　New York General Business Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

118.　GBL § 350-a(1) defines "false advertising" as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," and provides that, "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations." N.Y. Gen. Bus. Law § 350-a(1).

119.　Defendant's labeling and advertising of the Products constitute "advertising" within the meaning of GBL § 350-a(1).

120.　Defendant engaged in false advertising by representing that the Products are "Sugar Free" even though they contain sugar in the form of allulose—their first-listed and predominant ingredient by weight. Defendant's advertising was misleading in a material respect and failed to reveal facts material in light of the representations Defendant made.

121. The Representations were material and were likely to mislead a reasonable consumer acting reasonably under the circumstances.

122. Plaintiff Zahir and members of the New York Subclass relied on Defendant's false advertising and were injured as a result. They paid a premium for Products they otherwise would not have purchased, or would have purchased only at a lower price, and received Products worth less than what they paid. Had they known the truth, Plaintiff Zahir and members of the New York Subclass would not have purchased the Products or would have paid significantly less for them.

123. Defendant made the Representations willfully and knowingly and with reckless disregard for the truth.

124. As a direct and proximate result of Defendant's violations of GBL § 350, Plaintiff Zahir and members of the New York Subclass are entitled to recover their actual damages or five hundred dollars, whichever is greater, together with treble damages up to ten thousand dollars for Defendant's willful and knowing violations, reasonable attorneys' fees, and injunctive relief enjoining Defendant from continuing to disseminate the false advertising alleged herein. N.Y. Gen. Bus. Law § 350-e(3).

## COUNT VI
### Violation of Consumer Protection Statutes
### (On Behalf of Plaintiffs and the Multi-State Consumer Protection Subclass)

125. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

126. Plaintiffs bring this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.[19]

---

[19] While discovery may alter the following, Plaintiffs assert that the states with similar consumer fraud laws under the facts of this case include, but are not limited to:  Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code § 1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen. Stat. § 42-110a et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann. § 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code Ann. § 48-601, et seq.; 815 ILCS 505/1 et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen. Laws Ann. Ch. 93A, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen. Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605,

127. Defendant's acts and practices have deceived or are likely to deceive members of the Multi-State Consumer Protection Subclass and the public. Defendant represents that the Products are "Sugar Free" even though they contain four or five grams of allulose per serving, depending on the variant.

128. The foregoing deceptive acts and practices were directed at consumers.

129. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

130. As a result of Defendant's deceptive practices, Plaintiffs and members of the Multi-State Consumer Protection Subclass suffered economic injury because they would not have purchased the Products or would have paid less for them had they known that the Products were not, in fact, sugar free.

131. Plaintiffs and members of the Multi-State Consumer Protection Subclass seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT VII
### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Multi-State Warranty Subclass)

132. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

133. Plaintiffs bring this claim individually and on behalf of the Multi-State Warranty Subclass against Defendant.[20]

---

et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1-5.2(B), et seq.; S.C. Code Ann. §§ 39-5-10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code Ann. § 13-11-1 et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

[20] While discovery may alter the following, Plaintiffs assert that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Ga. Code § 11-2-313; HRS § 490:2-313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified

---

134. Plaintiffs and members of the Multi-State Warranty Subclass formed contracts with Defendant when they purchased the Products.

135. The terms of those contracts include the promises and affirmations of fact Defendant made on the Products' packaging and in its marketing that the Products are "Sugar Free," "Zero Sugar," and "0 Sugar."

136. This labeling and advertising constitute express warranties and became part of the basis of the bargain and the standardized contracts between Plaintiffs and members of the Multi-State Warranty Subclass, on the one hand, and Defendant, on the other.

137. As set forth above, Defendant purports through its labeling, marketing, and packaging to warrant that the Products are "Sugar Free." Defendant breached its express warranties by selling Products containing four or five grams of allulose per serving, depending on the variant. The Products do not conform to Defendant's Representations and warranties.

138. Plaintiffs and members of the Multi-State Warranty Subclass performed all conditions precedent to Defendant's liability under those contracts when they purchased the Products.

139. Plaintiffs and the members of the Multi-State Warranty Subclass would not have purchased the Products had they known the Products' true nature.

140. As a result, Defendant breached the express warranties made to the Multi-State Warranty Subclass. Plaintiffs and all members of the Multi-State Warranty Subclass suffered financial injury and are entitled to relief allowed by law.

Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46-2-313; and Wyo. Stat. Ann. § 34.1-2-313.

## COUNT VIII
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

141.     Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

142.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the substantially similar laws of the states applicable to members of the Nationwide Class.

143.     To the extent required, Plaintiffs assert this cause of action in the alternative to their legal claims, as permitted by Federal Rule of Civil Procedure 8.

144.     Plaintiffs and the Class Members conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Products.

145.     Defendant knew of the benefit Plaintiffs and the Class Members conferred on it.

146.     Defendant has been unjustly enriched by retaining revenues from Plaintiffs' and Class Members' purchases. That retention is unjust because Defendant misrepresented that the Products were sugar free, causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

147.     Defendant accepted and retained the benefit of revenues derived from sales of the Products to Plaintiffs and Class Members.

148.     Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

149.     Plaintiffs and Class Members are therefore entitled to restitution in the form of revenues derived from Defendant's sale of the Products.

150.     As a direct and proximate result of Defendant's actions, Plaintiffs and the Class Members have suffered damages in an amount to be proven at trial.

151.     Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's conduct.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                           36

152.     Plaintiffs and the Class Members lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

153.     Legal remedies available to Plaintiffs and the Class Members are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs have failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

154.     Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiffs and the Class Members would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

a)  For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes, and Plaintiffs' Counsel as Class Counsel;

b)  For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c)  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d)  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief;

e)  For prejudgment interest on all amounts awarded;

f)  For an order of restitution and all other forms of equitable monetary relief;

g)  For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

h)  For an order awarding Plaintiffs' and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 12, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By: /s/ Adrian Gucovschi
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
        nathaniel@gucovschilaw.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                      38

## CLRA VENUE DECLARATION
### (CAL. CIV. CODE § 1780(D))

I, Adrian Gucovschi, declare as follows:

1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in this District.  Plaintiff Max Nicholas Ulrich purchased the Products in Santa Rosa, Sonoma County, California.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on August 12, 2026.

/s/ Adrian Gucovschi
Adrian Gucovschi